**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

KIMBERLY THERESE ROURKE,

      Plaintiff,

v.                                                      Case No:   6:24-cv-2128-LHP

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant

---

**MEMORANDUM OF DECISION**

Kimberly Therese Rourke ("Claimant") appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for disability insurance benefits and supplemental security income ("SSI").   Doc. No. 1.   Claimant raises one argument challenging the Commissioner's final decision and, based on that argument, requests that the matter be remanded for further administrative proceedings.   Doc. No. 14.   The Commissioner asserts that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and that the final decision of the Commissioner should be affirmed.   Doc. No. 18.   For the reasons discussed herein, the Commissioner's final decision is

**REVERSED** and **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## I.      PROCEDURAL HISTORY.[1]

This case arises from Claimant's applications for disability insurance benefits and SSI, filed on May 14, 2021, and alleging a disability onset date of May 27, 2021. *See* R. 70, 78.    Her claims were denied initially and on reconsideration, and Claimant requested a hearing before an ALJ.    R. 106-15, 129-44, 171-89.    A hearing was held before the ALJ on December 13, 2023, at which Claimant was represented by an attorney.    R. 202-17, 41-69.    Claimant and a vocational expert ("VE") testified at the hearing.    R. 41-69.

After the hearing, the ALJ issued an unfavorable decision finding that Claimant was not disabled.    R. 15-40.    On October 16, 2024, the Appeals Council denied Claimant's request for review.    R. 1-7.    Claimant now seeks review of the final decision of the Commissioner by this Court.    Doc. No. 1.

---

[1] The transcript of the administrative proceedings is available at Doc. No. 10, and will be cited as "R.____."

## II.    THE ALJ'S DECISION.[2]

After careful consideration of the entire record, the ALJ performed the five-step evaluation process as set forth in 20 C.F.R. §§ 404.1520(a), 416.920(a).   R. 18-34. The ALJ first found that Claimant met the insured status requirements of the Social Security Act through December 31, 2025.   R. 21.   The ALJ also concluded that Claimant had not engaged in substantial gainful activity since May 27, 2021, the alleged disability onset date.   *Id.*   The ALJ further found that Claimant suffered from the following severe impairments: fibromyalgia, carpal tunnel syndrome, cubital tunnel syndrome, neuropathy, degenerative disc disease, depressive disorder, anxiety disorder, bipolar disorder, and alcohol dependence.   *Id.*[3]   The ALJ then determined that Claimant did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.   R. 22-25.

After careful consideration of the entire record, the ALJ found that Claimant

---

[2] Upon a review of the record, counsel for the parties have adequately stated the pertinent facts of record.   Doc. Nos. 14, 18.   Accordingly, the Court adopts those facts as stated by the parties by reference without restating them in entirety herein.

[3] The ALJ also concluded that Claimant's conditions of visual disturbance, plantar fasciitis, tarsal tunnel syndrome, temporomandibular syndrome, bursitis, Dupuytren's contracture, and insomnia are not severe impairments and that her rheumatoid arthritis condition is a non-medically determinable impairment.   R. 21-22.

had the residual functional capacity ("RFC") to perform light work as defined in

the Social Security regulations,[4] except:

> She can lift and/or carry 20 pounds occasionally, 10 pounds frequently.  She can stand and/or walk, with normal breaks, for a total of 6 hours per 8-hour workday, and can sit, with normal breaks, for a total of 6 hours per 8-hour workday.   She can frequently push and/or pull with her left lower extremity and with her right dominant upper extremity.   In terms of postural limitations, she can never climb ladders, ropes, or scaffolds, and can never kneel or crawl, but can occasionally climb ramps and stairs, and can occasionally balance, stoop, and crouch.   In terms of manipulative limitations, she can frequently grasp, twist, turn, handle, and finger with her bilateral upper extremities.   There are no visual or communicative limitations.   In terms of environmental limitations, she must avoid unprotected heights, flashing lights, moving mechanical parts, and concentrated exposure to vibration, and to irritants such as dust, fumes, odors, gases, poorly ventilated areas, and industrial chemicals.   In terms of mental limitations, she would be able to understand, remember, and carry out simple, routine instructions, consistent with SVP 1 and 2 jobs.   She could work in a low stress environment, defined as involving simple, work-related decisions; involving no assembly line work; and having only occasional changes in the work setting.

---

[4] The social security regulations define light work to include:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.   Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.   To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.   If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

R. 25. Based on this assessment, the ALJ found that Claimant was unable to perform any past relevant work. R. 31-32. However, after considering Claimant's age, education, work experience, RFC, and testimony from the VE, the ALJ found that there were jobs existing in the national economy that Claimant could perform, representative occupations to include marker, cashier II, and sales attendant. R. 32-33. Alternatively, the ALJ also found that there were jobs existing in the national economy that Claimant could perform when considering those same factors, but adding an additional limitation to sedentary level work (meaning Claimant could sit, with normal breaks, for a total of 6 hours per 8-hour workday, but could only stand and/or walk, even with normal breaks, for a total of just 2 hours per 8-hour workday), to include document preparer, surveillance system monitor, and election clerk. *Id.*

Accordingly, the ALJ concluded that Claimant had not been under a disability, as defined in the Social Security Act, from May 27, 2021, the alleged disability onset date, through the date of the decision. R. 34.

## III. STANDARD OF REVIEW.

The Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3). The scope of the Court's review is limited to determining whether the

Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV.   ANALYSIS.

Claimant raises one assignment of error in this appeal: that the ALJ failed to apply the correct legal standards to the consideration of the opinions of Martin Alla, DO, a consulting physician. Doc. No. 14.[5]

---

[5] The Commissioner has responded in opposition. Doc. No. 18. The Court notes

The ALJ is tasked with assessing a claimant's RFC and ability to perform past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis*, 125 F.3d at 1440. In determining a claimant's RFC, the ALJ must consider all relevant evidence, including the opinions of medical and non-medical sources. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

Claimant filed her applications for disability insurance benefits and SSI on May 14, 2021. R. 70, 78. Effective March 27, 2017, the Social Security Administration implemented new regulations related to the evaluation of medical opinions, which provide, in pertinent part, as follows:

> (a) How we consider medical opinions and prior administrative medical findings. We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.[6]    The

_____

that pursuant to Rule 8 of the Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g), Claimant was permitted to file a reply brief, but she did not.

[6] Subparagraph (c) provides that the factors to be considered include: (1) supportability; (2) consistency; (3) relationship with the claimant (which includes consideration of the length of treatment relationship; frequency of examination; purpose of treatment relationship; extent of treatment relationship; and examining relationship); (4) specialization; and (5) other factors that tend to support or contradict a medical opinion or

most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. §§ 404.1520c(a), 416.920c(a). The regulations further state that because supportability and consistency are the most important factors under consideration, the Commissioner "will explain how he considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the] determination or decision." *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). "Supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Welch v. Comm'r of Soc. Sec.*, No. 6:20-cv-1256-DCI, 2021 WL 5163228, at *2 (M.D. Fla. Nov. 5, 2021) (footnote omitted) (citing 20 C.F.R. §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2)).

Here, Claimant challenges the ALJ's consideration of the opinion of Dr. Alla, who conducted a consultative physical examination of Claimant at the request of the Florida Division of Disability Determinations on April 22, 2023. R. 721-28 (Exhibit 15F). Based on that examination, Dr. Alla rendered a report with the

---

prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

following findings:   (1) normal 5/5 strength in all extremities and no signs of deformities; (2) 4/5 right and left grip strength; (3) a 4/5 for dexterity with decreased grip strength and poor ability to manipulate objections; (4) normal reflexes in Claimant's biceps, triceps, knees, and Achilles; (5) normal tandem, heel, and toe walking, and ability to squat and rise without difficulty; (6) slow to sit and rise with minor issues getting off the exam table, but without normal findings; (7) normal gait and station; (8) no use of assistive devices for ambulation; and (9) no back deformities, muscle spasms, or tenderness and straight leg raising normal in seated and supine positions.   R. 723-724.   Dr. Alla also found Claimant's ranges of motion to be within normal limits with respect to her cervical spine, lumbar spine, shoulders, elbows, wrists, hands, hips, knees, and great toes.    R. 725-726. However, Claimant's range of motion for forward flexion of the lumbar spine was at the very low end (0 on a range of 0-90).   R. 726.

Based on his physical examination, Dr. Alla opined that Claimant was able to lift/carry 5-10 pounds frequently on both the left and right sides, due to Claimant's "poor dexterity and strength on exam, [range of motion] limitation in neck and lumbar; with general ropy texture tightness in the paravertebral gutter of the cervical neck."   R. 727.   Dr. Alla further opined that Claimant could sit, stand, and walk continuously.   *Id.*

The ALJ summarized Dr. Alla's findings, and ultimately found his opinions to be partially persuasive, as follows:

> When Dr. Martin Alla conducted a physical consultative examination of the clamant after this surgery on April 22, 2023, he noted a slightly reduced range-of-motion in the claimant's lumbar spine and cervical, but a normal range-of-motion across nearly all other joints (Exhibit 15F).   He also noted that the claimant retains "5/5" strength in all four extremities with a slight loss of grip strength to "4/5."   He also described the claimant walking normally on heels and toes, and she could squat and rise without difficulty.
>
> *****
>
> The undersigned views as partially persuasive the expressions of opinion contained in the physical consultative examination report of Dr. Martin Alla from April 22, 2023 (Exhibit 15F).   His view that the claimant remains able to continuously sit, stand, and walk is consistent with the findings and observations of this report, which noted that the claimant remained able to walk normally and without an assistive device, and she remains able to squat and rise without difficulty. However, his view regarding lifting and carrying is not supported by his own findings.   Indeed, he found that the claimant retains "5/5" strength in all four extremities.   This supports at least finding that that the claimant retains the lifting and carrying capacity commensurate with performing light level work.   Thus, the undersigned views the expression of opinion in this report as no more than partially persuasive.

R. 28, 30.   This is the extent of the ALJ's consideration of Dr. Alla's opinions.

Claimant challenges the adequacy of the ALJ's findings regarding both the supportability and consistency of Dr. Alla's opinions.   Doc. No. 14.   Upon review, the Court agrees with the Commissioner that the ALJ's analysis of supportability

- 10 -

was sufficient (Doc. No. 18), but finds that the ALJ failed to address the consistency factor.

With respect to the supportability factor, Claimant acknowledges that the ALJ discussed Dr. Alla's finding of 5/5 strength in all of Claimant's extremities as supportive of an RFC for light work, but argues that the ALJ should have done more.   Doc. No. 14, at 8.   Specifically, Claimant contends that the ALJ "completely overlooked" Dr. Alla's explanation for his opined lifting restrictions, and in particular failed to address Dr. Alla's citation to Claimant's poor dexterity and strength on exam, range of motion limitations in Claimant's neck and lumbar, and "general ropy texture tightness in the paravertebral gutter of the cervical neck." Doc. No. 14, at 8 (citing R. 727).

Claimant points to no legal authority suggesting that the ALJ must specifically address every finding or notation in a medical source's records in order to sufficiently address the supportability factor.   Here, the ALJ did what was required by the applicable regulations – he pointed to specific findings in Dr. Alla's own records which did not support the opined limitations.   There is no error on this point.   *See, e.g., Lugo v. Comm'r of Soc. Sec.*, No. 6:22-cv-809-MAP, 2023 WL 2910831, at *4 (M.D. Fla. Apr. 12, 2023) ("[T]he ALJ found Dr. Adaralegbe's opinion unsupported by his own examination findings and inconsistent with other record evidence, and she provided support (albeit brief) for her findings. This analysis

- 11 -

complies with the new regulations." (citations omitted)); *Hogan v. Comm'r of Soc. Sec.*, No. 2:22-cv-223-KCD, 2022 WL 17818653, at *4 (M.D. Fla. Dec. 20, 2022) ("To be sure, an ALJ must consider all relevant record evidence.   However, the regulations do not require an exhaustive discussion of the evidence when evaluating the consistency and supportability of an opinion." (citing 20 C.F.R. §§ 416.920(a)(3), 416.920c(b)(2)); *Irwin v. Comm'r of Soc. Sec.*, No. 2:20-cv-230-MRM, 2021 WL 4077586, at *7 (M.D. Fla. Sept. 8, 2021) ("[N]othing in the relevant regulations requires ALJs to apply an all-or-nothing approach when assessing a medical source's opinions. Instead, the ALJ's RFC determination must merely be supported by substantial evidence." (citations omitted)); *see also Garvin v. Comm'r of Soc. Sec.*, No. 2:23-cv-1027-SPC-KCD, 2024 WL 4647944, at *2 (M.D. Fla. Nov. 1, 2024) ("That the ALJ did not reference every piece of favorable evidence [in assessing supportability and consistency factors], without more, is not a ground for reversal.").

With respect to the consistency factor, however, the Court sides with Claimant.   As demonstrated by the above-quoted portions of the ALJ's decision, the ALJ wholly failed to address whether Dr. Alla's opinion was (or was not) consistent with the other evidence and medical opinions of record.   Rather, the ALJ focused exclusively on whether Dr. Alla's opinions were supported by Dr. Alla's own consultative report, and does not explain nor cite to any other record evidence. R. 28, 30.   As such, the ALJ failed to comply with the applicable regulations, and

the Court finds this to be error.  *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)). (obligating the Commissioner to "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the] decision"); *Von Achen v. Comm'r of Soc. Sec.*, No. 6:20-cv-1979-LHP, 2022 WL 833679, at \*5 (M.D. Fla. Mar. 21, 2022) (finding reversible error where "the ALJ failed to provide any explanation or citation to the record with respect to the consistency factor"); *Brown v. Comm'r of Soc. Sec.*, No. 6:20-cv-840-GJK, 2021 WL 2917562, at \*4 (M.D. Fla. July 12, 2021) (collecting cases where failure to address supportability and consistency factors in decision was reversible error); *Pierson v. Comm'r of Soc. Sec.*, No. 6:19-cv-01515-RBD-DCI, 2020 WL 1957597, at \*4 (M.D. Fla. Apr. 8, 2020) (finding reversible error where the ALJ failed to adequately consider the consistency factor under the new SSA regulations), *report and recommendation adopted*, 2020 WL 1955341 (M.D. Fla. Apr. 23, 2020).

The Commissioner suggests that the ALJ did not err because in the decision, the ALJ evaluated both the supportability and consistency of other administrative medical findings prior to addressing Dr. Alla's opinion, and therefore the ALJ did not need to repeat that same analysis for Dr. Alla.  Doc. No. 18, at 8.  And while acknowledging that "the ALJ decision may have benefited from some additional verbiage," the Commissioner argues that the ALJ's consideration of the consistency factor as it pertains to Dr. Alla "is readily apparent on review."  *Id.*  But the

- 13 -

Commissioner points to no legal authority to support this argument,[7] nor could he, for "[i]t is not the district court's role on review to scour the entirety of the record, with no guidance from the ALJ, in an attempt to divine what record evidence the ALJ believes creates unspecified inconsistencies with the particular opinions the ALJ has given partial weight." *Pierson*, 2020 WL 1957597, at *4 (citing *Hanna v. Astrue*, 395 F. App'x 634, 636 (11th Cir. 2010) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review.")), *report and recommendation adopted*, 2020 WL 1955341 (M.D. Fla. Apr. 23, 2020).

While an ALJ's statements should not be read in isolation, and the decision should be read as a whole, the Court disagrees that the ALJ's assessment is "readily apparent on review." To the contrary, it is entirely unclear in this case how the ALJ considered the consistency factor as to Dr. Alla, leaving the Court to guess at which particular records would support the ALJ's decision with respect to Dr. Alla's opined limitations, and in turn requiring the Court to reweigh the evidence, which it may not do. *See Von Achen*, 2022 WL 833679, at *5 (where the ALJ does not identify which portions of the record are inconsistent with the medical opinion at

---

[7] The Court is unpersuaded by the Commissioner's citation to *Raper v Comm'r of Soc. Sec.*, 89 F. 4th 1261, 1275-76 (11th Cir. 2024). First, *Raper* addressed the prior "treating physician" rule, which does not apply to the present case. And second, the ALJ in *Raper* actually explained why the treating physician's opinions were inconsistent with other record evidence, albeit in conclusory fashion. In contrast, the ALJ here wholly failed to address consistency in any manner.

issue, any attempt to do so would require the Court to reweigh the evidence, which the Court may not do); *Brown*, 2021 WL 2917562, at *4 ("[T]he ALJ cannot merely summarize the evidence, as a whole, and then conclude that [medical] opinions are not consistent with the evidence as a whole.   Rather, the ALJ must build a logical analytical bridge explaining what particular evidence undermined [the medical] opinions and why." (quoting *Michael v. Saul*, No. 2:20cv238, 2021 WL 1811736, at *11 (N.D. Ind. May 6, 2021))).   *See also DeFrank v. Comm'r of Soc. Sec.*, No. 2:22-cv-663-DNF, 2023 WL 8664684, at *5 (M.D. Fla. Dec. 15, 2023) ("Even though an ALJ need not use any 'magic words' when considering supportability and consistency, he still must address those two factors in the decision." (citing *Mercado v. Comm'r of Soc. Sec.*, No. 6:22-cv-287-DCI, 2023 WL 145154, at *5 (M.D. Fla. Jan. 10, 2023))).

Given that the ALJ erred in failing to address the consistency of Dr. Alla's opinion, the issue then becomes whether the ALJ's failure was harmless.   *See Carson v. Comm'r of Soc. Sec.*, No. 6:21-cv-20-DCI, 2022 WL 294719, at *2 (M.D. Fla. Feb. 1, 2022) (applying harmless error analysis to an ALJ's error in failing to mention or consider medical opinions, an error which the Court concluded was not harmless where it could have impacted the RFC determination); *Spaar v. Kijakazi*, No. 5:20-cv-94, 2021 WL 6498838, at *5 (S.D. Ga. Dec. 28, 2021), *report and recommendation adopted*, 2022 WL 141613 (S.D. Ga. Jan. 14, 2022) (considering whether error in failing to address the supportability of medical opinions was harmless, and finding that any

- 15 -

error could not be harmless where it could have a material impact on the RFC determination).

Upon consideration, the Court cannot conclude that the ALJ's failure to adequately consider Dr. Alla's opinion was harmless on the facts of this case.   At the very least, Dr. Alla's opinion is relevant to, and probative of, the resulting RFC, and the parties dispute the potential impact of Dr. Alla's proposed limitations on the RFC.   As such, "the Court cannot say that the failure to properly consider this opinion was harmless without re-weighing the evidence and engaging in conjecture that invades the province of the ALJ."   *Stephenson v. Comm'r of Soc. Sec.*, No. 6:21-cv-1536-DCI, 2023 WL 2305967, at *3 (M.D. Fla. Mar. 1, 2023) (citation and internal quotation marks omitted).   *See also McKiver v. Comm'r of Soc. Sec.*, No. 6:23-cv-712-DCI, 2024 WL 2013674, at *4 (M.D. Fla. May 7, 2024) (reversing where ALJ did not consider the consistency factor when determining the persuasiveness of a medical opinion, and refusing to engage in harmless error analysis as it would require "re-weighing the evidence and engaging in conjecture that invades the province of the ALJ." (quoting *Vicente v. Comm'r of Soc. Sec.*, 2023 WL 2864407, at *6 (M.D. Fla. Apr. 10, 2023))).[8]

---

[8] The Commissioner's argument here proves the Court's point.   The Commissioner contends, without citation to any authority in support, that Dr. Alla's opinion that Plaintiff could lift/carry 5-10 pounds frequently in each arm is the same as the RFC's limitation that Claimant can cumulatively lift/carry 20 pounds occasionally and 10 pounds frequently and perform light work.   Doc. No. 18, at 10.   *See also* R. 25, 727.

## V.   CONCLUSION.

For these reasons, it is **ORDERED** that:

1.      The Commissioner's final decision is **REVERSED AND REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g), and in particular, for the ALJ to reconsider Dr. Alla's opinion.

2.      The Clerk of Court is **DIRECTED** to enter judgment in favor of Claimant and against the Commissioner, and thereafter to **CLOSE** the case.

**DONE** and **ORDERED** in Orlando, Florida on March 13, 2026.

_Leslie Hoffman Price_
LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

---

However, this conclusory assertion is mere speculation and unsupported legally or factually.   Thus, in order for the Court to accept it, the Court would either be engaging in *post hoc* analysis, or reweighing the evidence, neither of which the Court is authorized to do.   In addition, Claimant argues that the ALJ's alternative finding that Claimant could perform sedentary level jobs would not erase any error, as it does not take into account other limitations at the sedentary level which are not addressed in the RFC – a point that the Commissioner notably does not address.   Doc. No. 14, at 8-9.

- 17 -